OPINION OF THE COURT
Gerard M. Weisberg, J.
Demetrius Arahovitis was committed to Matteawan State Hospital on December 19,1967, pursuant to an order under section 662-b of the former Code of Criminal Procedure. He was then under indictment for assault but, because of “idiocy, imbecility or insanity”, he had been found incapable of understanding the charges against him or of making a defense. (See Arahovitis v New York State Dept. of Correction, Ct of Claims, Jan. 9, 1981, Lengyel, J., affd no opn 89 AD2d 937.) Mr. Arahovitis remained in Matteawan until he was transferred to Mid-Hudson Psychiatric Center on February 14,1974. He was moved to Harlem Valley Psychiatric Center on October 19, 1974 and released from State custody on May 25, 1975.
Claimant seeks damages for involuntary servitude. He specifically states that he was forced to work in the barbershop at Matteawan from February 2, 1968 until July 12, 1969. He alleges that he was unwillingly compelled by hospital staff to accept this employment. In at least one instance this coercion took the form of a threat upon his life uttered by a guard.
The State does not deny that claimant worked in the barbershop. It asserts however that such employment was designed to be “therapeutic”.
*918 In a prior proceeding, the State moved to dismiss the instant cause of action and a companion claim involving assault and unlawful confinement. The motion as to illegal incarceration was granted and the caption of this matter was amended. However cáüses of action in assault and involuntary servitude were found to have been stated.[1] These determinations were affirmed by the Appellate Division. (Arahovitis v New York State Dept. of Correction, supra.)[2]
In order to establish a cause of action for involuntary servitude claimant must prove by a preponderance of credible evidence that (1) he did work, (2) involuntarily, (3) the work was not “normal housekeeping” or, if it was, that the amount demanded and the conditions under which it was performed were “ruthless”, and (4) the work “was not reasonably related to a therapeutic purpose”. (Dale v State of New York, 44 AD2d 384, 387, affd 36 NY2d 833; Krieger v State of New York, 54 Misc 2d 583; see Jobson v Henne, 355 F2d 129, 132.)
It is uncontroverted that the claimant worked as a barber, cutting the hair of fellow inmates. The task cannot be characterized as normal housekeeping but was in effect a full-time job, totally unrelated to claimant’s personal needs. (See Dale v State of New York, supra, pp 387-388; Jobson v Henne, p 132, n 3, supra.) We accept Mr. Arahovitis’ contention that he was not employed voluntarily. Indeed, this position is not disputed by defendant. Whether claimant’s job was “therapeutic” is therefore determinative of this claim.
“Therapeutic” is defined as “serving to cure or heal, curative” (Webster’s New World Dictionary of the American Language [2d Coll ed]). We are unable to discern how coerced employment in a barbershop is designed to restore the mental faculties of one deemed unfit to stand trial. We *919 note that while performing his labors claimant was not supervised by mental health professionals but by barbers, whose presence underscores the work-oriented nature of the activity. We therefore conclude that Mr. Arahovitis’job was not geared to treatment and thus cannot be characterized as therapy.
Defendant has failed to rebut this conclusion. It merely introduced a page from Mr. Arahovitis’ hospital record dated September 10, 1968. This document states, in part, that claimant “refuses to take any tranquilizing medication, is working in the barbershop and is adjusting satisfactorily to the daily routine.” The relationship between Mr. Arahovitis’ job and his treatment is not explained by this statement. The fact that claimant was “adjusting” does not add a therapeutic gloss to his work. He could just as well have been adapting to his coercive environment.
Mr. Arahovitis worked an average of 37Vz hours each week. No expert or other witness competent to testify as to the value of the services was called to offer an opinion. (Cf. Fisch, NY Evidence [2d ed], § 419.) This does not deprive claimant of a recovery. During the period of his employment, which we find extended for 75 weeks, the minimum wage was $1.60 per hour. (Labor Law, former § 652, subd 1, par [c] [repealed L 1978, ch 747, § 1].) Claimant is therefore entitled to compensation of $4,500.
Interest is payable on an award of withheld wages. (CPLR 5001, subd [a]; see Terrace Hotel Co. v State of New York, 31 AD2d 860.) We deem the time of accrual to be October 15, 1969, the “single reasonable intermediate date” within the period in which the cause of action arose. (CPLR 5001, subd [b].)
Upon the foregoing we award Mr. Arahovitis $4,500 for his involuntary servitude with appropriate interest thereon from October 15, 1969.[3]

. Claimant’s cause of action for assault was tried separately.

. Although the issue is moot in light of this affirmance, we note that at the time this claim arose Matteawan State Hospital was a facility under the jurisdiction of the Department of Correction established for the purpose of “holding in custody and caring for such mentally ill persons held under any other than a civil process” (Correction Law, former § 400 [repealed L 1976, ch 766, 8 1]; emphasis supplied). Claimant however was not a convicted prisoner but an unconvicted mental patient in this facility. In view of this status, he was not required to work while hospitalized. (See Bell v Wolff, 496 F2d 1252; Jobson v Henne, 355 F2d 129; cf. Draper v Rhay, 315 F2d 193, 197, cert den 375 US 915.)

. We note that if this action arose currently, the State would be under a statutory obligation to pay Mr. Arahovitis. Since April 1, 1977, Matteawan State Hospital has been a facility under the jurisdiction of the Department of Mental Hygiene. (L 1976, ch 766, 88 1, 4, 5, 15.) Patients employed in institutions of that department “shall receive compensation for [their] services in accordance with applicable state and federal labor laws.” (Mental Hygiene Law, 8 33.09, subd [b| [formerly 8 15.09, subd (b) (L 1972, ch 251)]; see 14 NYCRR part 25.)